(7 App. Div. 223)

### SCHIFFER et al. v. LAUTERBACH et al.

(Supreme Court, Appellate Division. First Department. June 29, 1896.)

SPECIFIC PERFORMANCE—PLEADING.

In an action for specific performance, it appeared that the plaintiffs and defendants' testator had entered into a written contract of partnership, described in the complaint as "Schedule A," subdivision 15 of which provided that if any of the parties should die during the term, and his representatives should elect to terminate the partnership, the surviving partners should have the right to purchase his interest at a valuation shown by the books, and on certain terms of payment. Defendants' testator having died, defendants gave notice that they intended to terminate the partnership, and plaintiffs gave notice that they would purchase testator's interest. The parties being unable to agree as to the value, a writing known as "Schedule C" was prepared, but never became effective, because it was not executed by all the parties. The complaint alleged that an attempt was made to ascertain the value of testator's interest, but defendants made an excessive claim, whereupon negotiations followed which matured into an agreement (Schedule C). The relief asked for was the enforcement of Schedule C, and of subdivision 15 of Schedule A. Held, that the action was for specific performance of both agreements, and the fact that Schedule C is not a complete contract did not preclude plaintiffs from obtaining the relief asked as to Schedule A.

Appeal from special term, New York county.

Action by Herman Schiffer and Alfred Schiffer against Edward Lauterbach and others. From a judgment entered on a decision dismissing the complaint, plaintiffs appeal. Reversed.

The action was brought to compel the specific performance of contracts. May 18, 1888, the plaintiffs and the defendants' testator entered into a copartnership under a written agreement, a copy of which is annexed to the com-

plaint, and known as "Schedule A." The firm name was Pelgram & Meyer, and the business to be carried on was the manufacture and sale of silk goods, ribbons, and similar merchandise. The term of the co-partnership was five years, commencing June 1, 1888. The defendants' testator contributed as capital to the common stock, so called, $175,000, and the plaintiffs contributed a like sum. The defendants' testator also conveyed to the co-partnership the real property formerly owned by himself, or by the firm of Pelgram & Meyer, at the agreed valuation of $181,047.34; the machinery, fixtures, and appliances, and leasehold interest, at the agreed valuation of $315,000; the raw material, stock on hand, and manufactured goods, the value to be ascertained by inventory, at actual cost; and also all other assets on hand, cash, book accounts, etc. The conveyance of the property was subject to existing indebtedness by mortgage and otherwise. The amount of the net value of such property and assets over and above all the indebtedness was to be ascertained June 1, 1888, and to be considered as surplus capital contributed by defendants' testator. The parties were to be equal partners,—the plaintiffs having one-half interest, and the defendants' testator one-half; and they were to receive 6 per cent. interest on the amount of common and surplus capital contributed by them, respectively, to be charged as an expense of the business. It was further agreed that when Aubrey E. Meyer, a son of defendants' testator, became 21 years of age, he should be admitted as a partner in the business, with such interest as his father should give him out of the capital contributed by the father to the co-partnership, and that the son should have a salary of $1,500 per year, to be charged to expense account, and in case the defendants' testator died before the son, Aubrey, became a member of the firm, the son should have the same rights in the firm as though he had been a member, and had become at his father's death a surviving partner. There were other provisions of the agreement which it is unnecessary to refer to here, and then, by subdivision 14, it was provided, in brief, that, if any of the parties should require the co-partnership to terminate at the end of the five years, they should, not less than six months before the expiration of the five years, serve upon all the parties a notice in writing subscribed by them, to that effect, and if no such notice should be served the term should be continued for another five years, and if no notice should be served at the end of the ten years the term should be again continued for another five years; and by subdivision 15 it was provided, in brief, that if any of the parties should die before the termination of the co-partnership, as created or extended, and the representatives of the deceased partner should elect to terminate the co-partnership as provided in the agreement, the surviving partners should have the right to purchase all the interest of the deceased partner in the property and business at a valuation shown by the books, deducting 25 per cent. upon the value of machinery, and should pay for the same in yearly installments of $50,000, with interest on the unpaid balance at 4½ per cent., and secure such payment by a mortgage on the property.

After the commencement of the co-partnership, and August 24, 1888, the defendants' testator died, leaving a will wherein he appointed defendants executors, and they qualified, and have since acted as such. The business was continued until the end of the first five years. After the death of the defendants' testator, his son, Aubrey, asserted his right to become a member of the firm under the agreement A. Differences arose between him and plaintiffs and the other defendants as to their respective rights. Litigation resulted, and finally, on June 30, 1890, an agreement was entered into, a copy of which is annexed to the complaint, and is known as "Schedule B." By this agreement it was provided that the plaintiffs should be regarded as the sole surviving partners of the firm, and Aubrey, the son of defendant's testator, relinquished all his right to be a surviving partner, and to any interest in the firm as a partner; and it was agreed that the plaintiffs should continue the business as sole surviving partners until the end of the term, and that the plaintiffs should pay the son, Aubrey, every year after July 1, 1889, during the term of the co-partnership, the sum of $3,000, in installments of $1,500 each, payable January and July, so long as he lived, under certain conditions; that the son Aubrey might enter into the same kind of business, but should not use

the firm name of Pelgram & Meyer, during the term of this co-partnership, except that he should have the sole right to the use of such firm name after May 31, 1893, the end of the first five years, in case he should commence business and use such firm name within nine months thereafter, and should give six months' notice of his intention to use such firm name. There were other provisions in this agreement which it is not necessary to refer to here. November 28, 1892, the defendants, pursuant to subdivision 14 of the agreement A, gave notice in writing to the plaintiffs that they intended to terminate the co-partnership at the end of the first five years. May 29, 1893, the plaintiffs gave notice to the defendants, in writing, that they would purchase the rights of the defendants' testator in the business and property, pursuant to subdivision 15 of the agreement A. The defendants seem to have acquiesced in the right to so purchase, and thereupon the parties proceeded to ascertain the amount to be paid for such interest. An inventory was made, but there was disagreement as to whether the amount arrived at, as the sum to be paid by the plaintiffs, was correct, and as to other details in perfecting the sale and securing the purchase money. Negotiations were then entered upon between the plaintiffs and some of the defendants as to an agreement for the settlement of their differences, and such negotiations were continued for some time. An agreement in writing was finally formulated, a copy of which is annexed to the complaint, and is known as "Schedule C." This written agreement bears date in January, 1894. It was never signed by defendant Ida Meyer or defendant Aubrey E. Meyer. It was signed by defendants Lauterbach and Lowenstein, who were satisfied with its terms, but it was never delivered at all by any of the defendants. The plaintiffs alleged in their complaint that this agreement was made about March 21, 1894. The defendants denied that it was ever made, executed, or delivered at all, or that it ever became a binding agreement upon the defendants. The plaintiffs sought to compel specific performance of this agreement, or a parol agreement to the same effect, or that defendants be compelled to carry out the provisions of subdivision 15 of the original agreement A. The defendants alleged their willingness at all times to carry out the terms of subdivision 15 of the original agreement A, but that the plaintiffs had entirely failed to comply with such terms themselves. The court held that the agreement C was never made, executed, or delivered, and that no agreement by parol to the effect therein stated was entered into between the parties, and the same therefore could not be ordered to be specifically performed. The court held that there was but one cause of action alleged, and that was one to compel specific performance of an agreement, the provisions of which were contained in the agreement C, and that no relief could be afforded, based upon the provisions of subdivision 15 of the agreement A, the plaintiffs failing as to the agreement C. The court dismissed the complaint upon the merits, with costs, and from the judgment entered upon such decision this appeal is taken.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS, PATTERSON, and INGRAHAM, JJ.

Samuel Untermyer and Louis Marshall, for appellants.
John E. Parsons, for respondents.

WILLIAMS, J.    We see no reason to disagree with the learned trial judge as to the conclusion arrived at by him, that the agreement C was never made, executed, or delivered, and that no agreement to the effect therein contained was actually made and perfected between the plaintiffs and any of the defendants. It is true that the agreement C was negotiated by two of the defendants, and, as formulated, was satisfactory to them; but it seems quite clear that these two defendants never intended to make C a binding agreement by themselves, and without the concurrence of the other defendants, or to make any parol agreement to the same effect, or to make any parol agreement at all, and the plaintiffs did

not suppose any such intention on the part of these two defend-
ants ever existed.   The intention of both the plaintiffs and these
two defendants was that the agreement, when made and perfected
at all, should be in writing; and they finally concurred in the
agreement C as correctly expressing the agreement which the four
parties desired should be made, executed, and delivered.   It could
not be said, fairly, under the evidence, that there was any under-
standing by any of the four parties that an agreement was to be
regarded as made or perfected until all the four defendants should
have concurred in signing and delivering the agreement C.   It is
quite apparent that the two defendants who negotiated and as-
sisted in formulating the agreement C were unwilling to make
any agreement by themselves which the other defendants would
not concur in.   These two defendants were careful not only to
require the other two defendants to join in the agreement, but
also to have the approval thereof of the beneficiaries under the
will of their testator; and to this end application was made to
the court in behalf of one of the beneficiaries, who was of unsound
mind, for leave to give such approval and ratify such agreement,
which the court granted.   An examination of the evidence given
by the several witnesses, and the correspondence relating to the
matter, which appears in the record, leaves no doubt in our minds
as to the correctness of the decision by the trial court that the
negotiations between the two plaintiffs and the two defendants
never ripened into a perfected agreement.   Certainly the other
two defendants never concurred in any such agreement, by parol
or otherwise, and never signed the agreement C, and this agreement
was concededly never delivered.

Upon this branch of the case we fully concur with the decision
of the trial court.   We cannot, however, agree with the conclusion
arrived at by the trial court, that the whole complaint should be
dismissed upon the merits, upon the theory that the action was one
to compel specific performance of the agreement C alone, and that,
failing to establish the right to that relief, the court could not
consider, investigate, or pass upon the other relief asked for by the
plaintiffs, the settlement of the rights of the parties, under sub-
division 15 of the original partnership agreement A, and the en-
forcement of the performance thereof by the defendants.   This
question was fairly presented on the trial, and it seems to us that
the plaintiffs' position with reference to it is unanswerable.

At the close of the plaintiffs' evidence the defendants asked the
court to compel the plaintiffs to state whether they relied upon
more than one cause of action, and, if so, that they be compelled
to elect upon which one they relied, and asked for judgment up-
on.   The plaintiffs stated that they relied upon the facts alleged
in the complaint, and claimed the right to either form of relief
asked for in the complaint which the court should hold that the
facts proved entitled them to.   They claimed the right to have
specific performance of the agreement C, or, failing in that, then
specific performance of subdivision 15 of the agreement A.   The
court, however, held that but one cause of action was stated, and

that was to enforce the agreement C, and plaintiffs duly excepted. Thereupon the evidence on the part of the defendants was given, and the decision of the court was made, which dismissed the complaint on the merits, on the grounds, solely, that the agreement C was never made, executed, or delivered, and, if so made, would not be enforced in equity. The decision was excepted to by the plaintiffs as a whole, and as to each part separately. The complaint, after setting forth the agreements A and B, alleged the notice by defendants, under subdivision 14 of the agreement A, to terminate the co-partnership at the end of the first five years, and notice by plaintiffs that, under subdivision 15 of the agreement A, they claimed the right to purchase the interest of the defendants' testator in the business and assets of the firm; that thereupon an attempt was made to ascertain and agree upon the amount to be secured and paid by plaintiffs for such interest; that the plaintiffs claimed that the amount, as ascertained pursuant to subdivision 15 of the agreement A, was $609,000; and that the plaintiffs were ready and willing to pay this amount of money and give the security therein provided for, but the defendants claimed that the amount to be so secured and paid should be much larger than $609,000. It was further alleged that the defendants expressed dissatisfaction as to the terms of payment, the rate of interest, and the security provided for by subdivision 15 of the agreement A, and desired to have such terms modified, and said that if such change could be made they would consent to a reduction of the amount of the purchase price of the interest which they (defendants) claimed it really was or should otherwise be, and that thereupon the negotiations followed which the plaintiffs claimed matured into the agreement C. The complaint also alleged the refusal by defendants to carry out the terms of either the agreement C, or of subdivision 15 of the agreement A. The relief asked for was the enforcement of the agreement C, or of subdivision 15 of the agreement A. We are not called upon to determine whether, upon the evidence given at the trial, relief should have been afforded to the plaintiffs under subdivision 15 of the agreement A, because, while the case was being tried, and before all the evidence was taken, the court held that under the pleadings no such relief could be had; and the only question, therefore, is whether the court was right in giving such effect to the pleadings. If it was not, then the case should go back for a new trial, and the court should take all the evidence bearing upon this branch of the case, and pass upon the question upon the merits. Moreover, no question was raised that the proofs were insufficient to authorize the court to afford such relief. The only question raised was whether the relief could be had under the pleadings, and the dismissal of the complaint was put solely on this ground of defective pleadings. By virtue of the defendants' election to discontinue the co-partnership at the end of the first five years, and the plaintiffs' election to purchase the interest of defendants' testator, the plaintiffs were entitled to a transfer of such interest upon giving the security and paying the amount of the purchase price, to be determined under the provi-

sions of subdivision 15 of the agreement A. A controversy having arisen as to what amount of such purchase price should be computed and fixed at under the terms of such subdivision 15, it was competent for the parties to adjust and compromise their differences. And then, if they did not or could not perfect such agreement and compromise, and the defendants refused to carry out the provisions of subdivision 15 of the agreement A because they could not agree as to the purchase price, it was proper for plaintiffs to appeal to the court, and ask it to settle the rights of the parties, and compel a compliance with the provisions of the agreement. Such was the position of the case when the court found the agreement C had not been made, executed, or delivered, and that no agreement by parol to the like effect had been made. Certainly the plaintiffs were entitled to have the other branch of the case considered by the court, and the merits relating thereto passed upon. It is hardly necessary to cite any authority for this proposition. The following cases may be referred to, however, as supporting the view taken by us: Bennet v. Vade, 2 Atk. 324; Colton v. Ross, 2 Paige, 396; Lloyd v. Brewster, 4 Paige, 537; New York Ice Co. v. North Western Ins. Co., 23 N. Y. 357; Barlow v. Scott, 24 N. Y. 40; Sternberger v. McGovern, 56 N. Y. 12, 21; Hall v. Hall, 38 How. Prac. 97.

Our conclusion is that the judgment should be reversed, and a new trial ordered, with costs to abide event. All concur.